IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NYA T. REYNOLDS,

    **Plaintiff,**

v.                                                                  **Civil Action No. 3:15cv209**

PIONEAR, LLC,

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Dismiss filed by Defendant Pionear, LLC ("Pionear") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 8.) Plaintiff Nya T. Reynolds has responded, and Pionear has replied. (ECF Nos. 12, 13.) This matter is ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will deny Pionear's Motion to Dismiss.

### I. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

---

[1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] The parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

## II. Factual and Procedural Background

### A. Summary of Allegations in the Complaint[3]

Reynolds alleges in the one-count Complaint that Pionear defamed her while she underwent a security clearance for her current job. Reynolds contends that a Pionear employee

---

[3] For purposes of the motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Reynolds. *Matkari*, 7 F.3d at 1134.

2

made three statements about her during the security clearance process that constitute defamation and defamation *per se*.[4] The three statements are: "(i) that Reynolds was discharged by Pionear for 'unfavorable employment' or 'conduct' at Bank of America[;] (ii) that she had engaged in 'inappropriate conduct' with a co-worker[;] and[,] (iii) that she had spoken 'rudely and with profanity' to her co-worker." (Compl. ¶ 12.) To further understand the context in which the allegedly defamatory statements were made, the Court summarizes the events out of which the statements arose, as presented by Reynolds in the Complaint.

In early 2012, Pionear hired Reynolds as a staffer and placed her at a Bank of America location in Richmond, Virginia.[5] In September 2012, while working at her assigned Bank of America location, "Reynolds was the victim of an ugly personal verbal attack by a fellow Pionear staffer (who was also working at the [Bank of America] location) named Leshebra McGee." (*Id.* ¶ 8 (the "Incident").) During the Incident, "McGee yelled at Reynolds, cussed her out (saying to Reynolds that she [McGhee] 'don't give a f[***] who you are'), and threatened to harm her (saying, among other things, 'I ain't playin',' 'I will slap you,' 'I will f[***] you up[,]' and 'I will

---

[4] The Complaint alleges both defamation and defamation *per se*. "All defamation is either defamation *per se* or *per quod*." *Sepmoree v. Bio-Med. Applications of Va., Inc.*, No. 2:14cv141, 2014 WL 4444435, at *3 (E.D. Va. Sept. 8, 2014) (citing *Jarrett v. Goldman*, 67 Va. Cir. 361, 2005 WL 1323115, at *5 (Va. Cir. Ct. May 31, 2005)). "The difference between the two concerns the second element of a defamation claim: if it falls within the four categories of defamation *per se* it is actionable without any damages; whereas if it is defamation *per quod* the statements are defamatory by implication and cause the injured party special damages." *Id.* (footnote omitted) (citing *Jarrett*, 2005 WL 1323115, at *5–6); *see also Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 853 (Va. 1985) ("A plaintiff who proves the publication of words actionable *per se* is simply relieved of the necessity of proving the quantum of damages for injury to reputation, humiliation, and embarrassment."). Because the Court finds that Reynolds plausibly alleges damages arising out of her defamation claim, the Court finds no reason to make a distinction between these two forms of defamation.

[5] The parties do not specify exactly how Pionear employed Reynolds, except to say that Reynolds worked "as a temporary contractor assigned to work at a Bank of America location in Richmond, Virginia." (Mem. Supp. Mot. Dismiss at 1, ECF No. 9.) The Complaint does not further outline Reynolds's duties at Bank of America.

3

kill you, Nya.')." (*Id.* ¶ 9 (first alteration in original).)  As a result of the Incident, Bank of America terminated Reynolds's placement, and Pionear terminated Reynolds's employment. Reynolds "immediately complained (to both [Bank of America] and Pionear) about the outcome of the [I]ncident and also filed criminal charges against McGhee in Henrico County General District Court." (*Id.* ¶ 10.)  As alleged by Reynolds:  "Neither Reynolds'[s] complaints to [Bank of America] and Pionear (which only irritated [Bank of America] and Pionear and which caused Pionear to threaten Reynolds—'you'll be sorry,' she was told—stop contacting [Bank of America]) nor her criminal charges yielded satisfactory results for her . . . ." (*Id.*)

"[I]n early May 2014, . . . while applying for a higher level security clearance in her current federal government job, Reynolds learned (from the investigator in charge of evaluating the security clearance request) that Pionear had internally given her a 'black mark' for purposes of future hiring." (*Id.* ¶ 11.)  Specifically, on or about May 2, 2014, a Pionear employee made the above three statements to a federal investigator about Reynolds's employment with Pionear. Reynolds contends that all three statements are false.

Reynolds claims that as a result of the three false statements, she "has been damaged both in her person and her employment." (*Id.* ¶ 15.)  Reynolds asserts that "[s]he has been substantially harmed in her reputation" and also that "her promotion [was] delayed while her current employer investigated her with respect to Pionear's false statements about her prior employment." (*Id.*)  She "has suffered damages related to such things as mental and emotional distress, reputational harm, loss of sleep, humiliation, embarrassment[,] and loss of time." (*Id.* ¶ 20.)

B. **Procedural History**

Reynolds filed her Complaint against Pionear, seeking $150,000 in compensatory damages, $350,000 in punitive damages, and pre- and post-judgment interest. Pionear moved to dismiss the Complaint on two cognizable grounds: (1) the alleged defamatory statements are not actionable because they are statements of opinion; and, (2) Reynolds suffered no damages because she obtained a higher security clearance and promotion.[6]

### III. Analysis

Reynolds's allegations survive Rule 12(b)(6) scrutiny. First, Reynolds plausibly alleges actionable statements. At a minimum, Pionear's statements, and the context in which they were made, imply that "provably false" facts form the basis for the allegedly defamatory statement. Second, Reynolds plausibly alleges damages stemming from her discovery of Pionear's false statements. The Court will deny Pionear's Motion to Dismiss for the reasons stated below.

A. **Standard for Pleading Defamation Under Virginia Law**

In Virginia,[7] a plaintiff claiming defamation must allege the "(1) publication[8] (2) of an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). "To prevail on a claim for defamation, a party must prove by a preponderance of the

---

[6] Pionear also argues that the alleged defamatory statements are not actionable because they are true. The Court easily dispenses with this argument. At the motion to dismiss stage, the Court must accept as true Reynolds's well-pleaded factual allegations. *Matkari*, 7.3d at 1134. Here, the Complaint expressly avers that the three allegedly defamatory statements are false.

[7] A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

[8] Pionear does not dispute the publication of the three allegedly defamatory statements. "Publication occurs when an actionable statement is transmitted to some third person so as to be heard and understood by such person." *Suarez v. Loomis Armored US, LLC*, No. 3:10cv690, 2010 WL 5101185, at *2 (E.D. Va. Dec. 7, 2010) (citation omitted) (internal quotation marks omitted).

evidence that the allegedly defamatory statements are both false and defamatory, so 'harm[ing] the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her].'" *Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions LLC*, No. 3:12cv131, 2012 WL 1898616, at *3 (E.D. Va. May 23, 2012) (first alteration in original) (quoting *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). "If the statements at issue are either not defamatory, objectively true, or protected expressions of opinion," no actionable defamation exists. *Id.* at *3 (citing *Am. Commc'ns Network v. Williams*, 568 S.E.2d 683, 686 (Va. 2002)). Virginia makes no distinction between an action for written defamation—*i.e.*, libel—and one for spoken defamation—*i.e.*, slander. *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981).

A statement is defamatory *per se* if, among other circumstances not pertinent here, it "imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties" or "prejudices the party in [his or] her profession or trade." *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 n.2 (Va. 1998) (citing *Fleming*, 275 S.E.2d at 635).[9] Otherwise, "to be defamatory, a statement must be more than unpleasant or offensive . . . ." *Hockycko v. Entrodyne Corp.*, No. 6:05cv25, 2005 WL 3132320, at *6 (W.D. Va. Nov. 22, 2005). "Defamatory words 'make the plaintiff appear odious, infamous, or ridiculous.'" *Cutaia v. Radius Eng'g Int'l, Inc.*, No. 5:11cv77, 2012 WL 525471, at *3 (W.D. Va. Feb. 16, 2012) (quoting *Chapin*, 993 F.2d at 1092).

---

[9] To be actionable in the profession or trade context, "a statement must be 'necessarily hurtful in its effect upon plaintiff's business and must affect him [or her] in his [or her] particular trade or occupation,' and there must be 'a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff.'" *Marroquin v. Exxon Mobil Corp.*, No. 08-391, 2009 WL 1529455, at *9 (E.D. Va. May 27, 2009) (quoting *Fleming*, 275 S.E.2d at 636).

"Pure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation." *Chaves v. Johnson*, 335 S.E.2d 97, 101 (Va. 1985). Such statements include "speech which does not contain a provably false factual connotation, or . . . which cannot reasonably be interpreted as stating actual facts about a person." *Besen*, 2012 WL 1440183, at *3 (alteration in original) (quoting *Yeagle*, 497 S.E.2d at 137); *see also Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 823 (E.D. Va. 2013) ("Statements of opinion are generally not actionable, because such statements cannot be objectively characterized as true or false." (citing *Jordan*, 612 S.E.2d at 206)). Expressions of opinion include "[s]tatements that are relative in nature and depend largely upon the speaker's viewpoint." *Jordan*, 612 S.E.2d at 206 (citation omitted). Nonetheless, "[d]efendants can be held liable for defamation 'when a negative characterization is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener].'" *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, No. 7:09cv00472, 2011 WL 1327396, at *11 (W.D. Va. Apr. 6, 2011) (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 4:3.2 (4th ed. 2010)). "The test for determining whether facts that may be actionable defamation have been implied is 'whether a reasonable listener would take [the speaker] to be basing his [or her] 'opinion' on knowledge of facts of the sort than can be evaluated in a defamation suit.'" *Id.* (citing Sack, *supra* § 4:3.2).

Although the Supreme Court of the United States has not provided a categorical protection for *all* expressions of opinion,[10] a statement merits protection if it "cannot 'reasonably [be] interpreted as stating actual facts.'" *Milkovich*, 497 U.S. at 20 (alteration in original) (quoting

---

[10] "Causes of action for defamation have their basis in state common law but are subject to principles of freedom of speech arising under the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia." *Yeagle*, 497 S.E.2d at 137.

7

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)); *see also Snyder v. Phelps*, 580 F.3d 206, 218–19 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011). To determine whether a statement posits facts, the United States Court of Appeals for the Fourth Circuit directs courts to look to the actual language used, as well as the context and general tenor of the statement. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich*, 497 U.S. at 21); *see also Snyder*, 580 F.3d at 219–20 (explaining that courts *must* consider the context of an allegedly defamatory statement in the analysis of whether the statement constitutes opinion). The Supreme Court of Virginia similarly requires an examination of context. *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009) ("In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement . . . . Rather, a court must consider the statement as a whole."). The Court determines as a matter of law whether a statement "is one of fact or one of opinion." *Chaves*, 335 S.E.2d at 102.

The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a public or private figure and the damages sought. *Suarez*, 2010 WL 5101185, at *2. Under Virginia law, a private individual like Reynolds must make a showing that Pionear "published the statement knowing that it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Sepmoree*, 2014 WL 4444435, at *7 (quoting *Gazette Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985)).[11]

---

[11] Whether Pionear made the allegedly defamatory statements with knowledge of their falsity or otherwise lacking grounds to believe the statements were true is not in dispute for purposes of this motion. Reynolds specifically alleges that the statements were made in the absence of an investigation.

B.   <u>Reynolds Plausibly Alleges Provably False Factual Connotations</u>

At the motion to dismiss stage, this Court finds that the allegedly defamatory statements do not constitute, as Pionear contends, non-actionable opinions. When considering the context and tenor of the alleged conversation, Reynolds plausibly alleges "provably false factual connotation[s]." *Besen*, 2012 WL 1440183, at *3. Indeed, Pionear's statements to a federal investigator conducting a security clearance investigation can "reasonably [be] interpreted as stating actual facts." *Milkovich*, 497 U.S. at 20 (alteration in original) (quoting *Hustler Magazine, Inc.*, 485 U.S. at 50). The Court addresses each allegedly defamatory statement seriatim.

1.   **Sans Context, Pionear's First Two Statements Constitute Non-Actionable Opinions**

Reynolds first alleges that Pionear defamed her when the company reported to a federal investigator "that Reynolds was discharged . . . for 'unfavorable employment' or 'conduct' at Bank of America." (Compl. ¶ 12.) In isolation, a characterization of Reynolds's employment as "unfavorable" constitutes an expression of opinion that wholly rests on Pionear's perspective as to what "unfavorable" means. *See Trump Va. Acquisitions LLC*, 2012 WL 1898616, at *5 ("In general, statements of unsatisfactory job performance do not rise to the level of defamation."); *see also Marroquin*, 2009 WL 1529455, at *9 (finding, on summary judgment, that the terms "very bad," "inappropriate," and "improper" constitute opinions that cannot be proven false). Surely, the word "unfavorable" is an ambiguous term, the meaning of which hinges on what the speaker subjectively believes constitutes, in this context, favorable employment. Likewise, when unaccompanied by context, Pionear's second statement—"that [Reynolds] had engaged in 'inappropriate conduct' with a co-worker"—reflects an opinion that entirely depends on Pionear's viewpoint. (Compl. ¶ 12.) What is "inappropriate" to one speaker may differ completely if

9

analyzed from the viewpoint of another. *See Marroquin*, 2009 WL 1529455, at *9; *see also Chaves*, 335 S.E.2d at 101 ("A corporal might seem inexperienced to a sergeant, but not to a private."). Thus, in a vacuum, the first two statements are not "provably false facts or factual connotation[s]." *Chapin*, 993 F.2d at 1093.

The Court's analysis with respect to the first two statements does not end there. The Court must also evaluate the context and general tenor of the statements, as pleaded in the Complaint, "to determine if [the allegedly defamatory statements] could be interpreted as asserting a fact." *Biospherics, Inc.*, 151 F.3d at 184. Analyzing the context and general tenor of the statements here requires the Court to review the entirety of the alleged conversation between Pionear and the federal investigator. *See Hyland*, 670 S.E.2d at 751 ("In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement . . . ."). Thus, in assessing the defamatory nature of Pionear's statements regarding Reynold's "unfavorable employment" and her "inappropriate conduct," the Court must also consider Pionear's third statement: that Reynolds "had spoken 'rudely and with profanity' to her co-worker."[12] (Compl. ¶ 12.)

### 2. Pionear's Third Statement Implies that Pionear Is Privy to "Provably Wrong" Facts, Which Form the Basis for the Statement

While recognizing that a speaker's perspective as to what constitutes "profanity" may differ on the fringe of the term's meaning, the Court finds that Pionear's statement that Reynolds spoke "with profanity" constitutes an actionable statement. Pionear's third statement implies, at a

---

[12] According to Reynolds, the "with profanity" portion of this statement serves as an anchor, grounding the first two statements in fact, and thereby making all statements "provably false." (*See* Pl.'s Opp'n. 11, ECF No. 12 ("[W]ith the allegation of speaking 'with profanity' serving as the proper fact-based anchor, the other statements at issue . . . turn from pure opinions [sic] statements into mixed statements.").) Reynolds acknowledges that her entire defamation claim rests on whether Pionear's statement that Reynolds "had spoken . . . 'with profanity' to her co-worker" constitutes a "provably false" statement under Virginia defamation law.

minimum, that Pionear is privy to "provably false" facts that form the basis for the allegedly defamatory statement. In making this determination, the Court looks first to the ordinary meaning of the term.[13]

The *New Oxford American Dictionary* defines "profanity" in three ways: (1) as blasphemous or obscene language; (2) as a swear word or an oath; and, (3) as irreligious or irreverent behavior. *New Oxford American Dictionary* 1394 (3d ed. 2010). Guided by this definition, it is evident that whether language constitutes "profanity" depends, at least partially, on the speaker's viewpoint.[14] When deciding whether language rises to the level of "profanity," one cannot make the determination without undertaking some sort of judgment call as to what actually constitutes, for instance, blasphemous or obscene language.

Nonetheless, a statement does not automatically qualify as a non-actionable opinion simply because the speaker necessarily engaged in some form of inferential thought in characterizing what was observed. As noted above, "[d]efendants can be held liable for defamation 'when a negative characterization is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener]." *Baylor*,

---

[13] "To identify an opinion, a trial judge should (1) consider the author or speaker's choice of words; (2) decide whether the challenged statement is 'capable of being objectively characterized as true or false;' (3) examine the context of the challenged statement within the writing or speech as a whole; and[,] (4) consider 'the broader social context into which the statement fits.'" *Baylor*, 2011 WL 1327396, at *8 (quoting *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1287–88 (4th Cir. 1987)).

[14] As Pionear points out in its briefing, at least one court has concluded that the relatively vague nature of profanity may be problematic. (Def.'s Reply 3 (citing *Walker v. Dillard*, 523 F.2d 3, 5 (4th Cir. 1975)). In *Walker*, the Fourth Circuit found that the words "vulgar," "profane," and "indecent" were overbroad in a criminal statute that restricted speech because those words were not "used in conjunction with other, more specific adjectives like 'obscene,' 'lewd' and 'lascivious.'" 523 F.2d at 5. Notwithstanding the fact that *Walker* evaluated a criminal curse and abuse statute and not a defamation claim, Pionear's argument does not persuade. As the Court will explain, a term's relative nature does not necessarily dictate whether it is actionable.

2011 WL 1327396, at *11 (quoting Sack, *supra* § 4:3.2). As the *Baylor* court explained: "The test for determining whether facts that may be actionable defamation have been implied is 'whether a reasonable listener would take [the speaker] to be basing his [or her] 'opinion' on knowledge of facts of the sort that can be evaluated in a defamation suit.'" *Id.* (quoting Sack, *supra* § 4:3.2).

Here, the unspoken facts that could be evaluated in a defamation suit are the *actual words* used by Reynolds that Pionear has characterized as "profanity." By stating that Reynolds spoke "with profanity," Pionear has implied that Reynolds uttered actual profane words, the specifics of which were not divulged in the allegedly defamatory statement. In contrast, Reynolds alleges that this implication is false by avowing in the Complaint that she *never* spoke *any* "profanity." (Compl. ¶ 13.) On this record, the Court finds that Reynolds plausibly alleges an actionable statement with respect to Pionear's statement that Reynolds spoke "with profanity."

### 3. Pionear's Third Statement Provides Context Necessary for Its First Two Statements to Qualify as Actionable Statements

At this early stage of litigation, in light of its finding that Pionear's third statement constitutes a "provably false" actionable statement, the Court finds that the first two statements are likewise actionable. To determine whether a statement posits facts, the Court must look to the actual language used, as well as the context and general tenor of the statement. *Biospherics, Inc.*, 151 F.3d at 184 (citing *Milkovich*, 497 U.S. at 21). The Court now concludes that the otherwise subjective first and second statements are "laden with factual content" supporting a claim for defamation. *See Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 43 n.8 (Va. 1987) (citation omitted). Coupled with Pionear's third statement, comments regarding Reynolds's "unfavorable employment" and "inappropriate conduct" are now, at least on the record before the Court, tied to a "provably false" factual underpinning. To the extent they relate to Reynolds's

12

purported use of "profanity," Pionear's first two statements constitute actionable statements that survive Rule 12(b)(6) scrutiny.[15]

### C. Reynolds Plausibly Alleges Damages

At the motion to dismiss stage, presuming as true the allegations in the Complaint, Reynolds plausibly alleges damages. While Reynolds would not be able to satisfy the Rule 12(b)(6) standard with respect to damages by reciting mere "labels and conclusions," she pleads enough specificity for her claim to survive at this stage. Among other things, Reynolds alleges to have experienced a delay in her promotion and emotional distress upon learning of Pionear's false statements about her. (See Compl. ¶ 20 ("As a proximate cause of Pionear's conduct, Reynolds has suffered damages related to such things as mental and emotional distress, reputational harm, loss of sleep, humiliation, embarrassment and loss of time.").) Reasonably inferring a delay of increased pay alongside the promotion, Reynolds places actual damages at bar. At this procedural posture, Reynolds's allegations of damages survive Rule 12(b)(6) scrutiny.

### IV. Conclusion

For the foregoing reasons, the Court will deny Pionear's Motion to Dismiss. (ECF No. 8.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date March 25, 2016

---

[15] Pionear raises in its Reply Brief, for the first time, an argument that the allegedly defamatory statements are not actionable because they lack "the necessary defamatory sting." (Def.'s Reply 7, ECF No. 13.) The Court need not address any arguments raised for the first time on reply because Pionear's timing "denied [Reynolds] a full opportunity to respond to [the] arguments and notice that [she] should address the issue." Seneca Ins. Co. v. Shipping Boxes I, LLC, 30 F. Supp. 3d 506, 512 (E.D. Va. 2014) (citing Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006)).